F                     **IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | : | | |
| v. | : | **CRIMINAL NOS.** | **19-CR-00311** |
| | | | **20-CR-00153** |
| **JERRY ZWEITZIG** | : | | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Jerry Zweitzig stands before this Court to be sentenced for his convictions for manufacturing images of his sexual abuse and exploitation of his minor family members and his enormous collection of more than 10,000 images of the sexual abuse of children.  The defendant's sentencing Guideline range in this case calls for life imprisonment,[1] and based on the egregious circumstances of the defendant's crimes set forth below, the government seeks a sentence of incarceration commensurate with the gravity of his crimes against children.  Specifically, the government recommends the statutory maximum per count to run consecutively for a total sentence of 200 years' incarceration, lifetime supervised release, and mandatory restitution.

---

1 As discussed in detail below, the statutory maximum per count for Counts One through Five in Case No, 19-CR-00311 and Count One in Case No. 20-CR-00153 is 30 years' incarceration with a 15-year mandatory minimum term.  Because the images in the defendant's collection depict children under the age of 12 years, the statutory maximum for Count Six in Case No, 19-CR-00311 is elevated to 20 years' incarceration.  Thus, the total statutory maximum penalty is 200 years' incarceration.

I.  **BACKGROUND**

In Crim. No. 19-CR-00311, defendant Jerry Zweitzig was indicted by the federal grand jury in Counts One through Five with manufacture and attempted manufacture of child pornography, in violation of 18 U.S.C. § 2251(a) and (e); and in Count Six with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), arising from the defendant's sexual exploitation of Minor #1, a family member, over a period of years, his photographing and videotaping of his sexual abuse of this child,[2] and his extensive collection of child pornography of thousands of additional children that he downloaded from the Internet.  The defendant entered an open guilty plea to all charges in the Indictment.  No agreement with respect to sentencing has been reached with the Government.

In preparing for Zweitzig's sentencing, the prosecution team identified video of Minor #2, an infant male and Minor #1's youngest sibling.  Defendant Zweitzig was subsequently charged again in an Information in Crim. No. 20-CR-00153  with an additional count of manufacturing and attempted manufacturing of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), arising from the defendant's sexual exploitation of Minor #2 and his videotaping of his sexual abuse of the infant.[3]  Again, no agreement with respect to sentencing has been reached with the Government.

---

2 Attached as Exhibit A1 is a photograph of Minor # 1 at the approximate age when the abuse began.
3 Attached as Exhibits D1 and D2 are photographs of Minor # 2 taken in proximity to the sexual abuse perpetrated by Zweitzig.

II.    **FACTUAL BACKGROUND**[4]

          In December 2018, Homeland Security Investigations (HSI) Philadelphia received a report and request for assistance from the Horsham Police Department regarding an investigation into Jerry Zweitzig.  Specifically, Horsham had information that Zweitzig took sexually exploitive pictures of Minor #1 (born in 2003) in Hatboro, Pennsylvania.  Previously, on April 5, 2018, Montgomery County authorities executed a search and seizure warrant and electronic evidence was seized from Zweitzig's Hatboro residence including multiple hard drives, computers, flash drives, and Nikon digital cameras.   Examination of the seized evidence revealed over 10,000 images of child pornography, including, but not limited to, multiple images of Minor #1 and a video in which Jerry Zweitzig is grooming Minor # 1 for sexual activity.

          On May 30, 2019, defendant Zweitzig was indicted in the Eastern District of Pennsylvania and charged with five counts of manufacturing child pornography in violation of Title 18, United States Code Section §§ 2251(a) and (e), and one count of possession of child pornography in violation of Title 18, United States Code Section §§2252(a)(4)(B), (b)(2).  That matter is captioned *United States v. Jerry Zweitzig*, Criminal Docket No. 19-CR-00311.  On June 6, 2019, Jerry Zweitzig was arrested pursuant to a federal warrant.  On October 28, 2019, Zweitzig pleaded guilty to all counts in the Indictment arising from the defendant's sexual exploitation of Minor #1 over a period of years, his photographing and videotaping of his sexual

---

[4] The facts of the case were previously recited in the Government's Guilty Plea Memoranda and are also recounted in the Presentence Investigation Report.  *See* Criminal No. 19-CR-00311, Dkt. No. 19, Criminal No. 20-CR-00153, Dkt. No. 7, PSR ¶ 8-29.  Defendant Zweitzig has lodged no objections to the factual recitation.

abuse of Minor #1, and his extensive collection of child pornography of thousands of additional children that he downloaded from the Internet.

The investigation leading up to the federal indictment unfolded as follows.

On March 6, 2018, Horsham Township Police Department received a phone call regarding allegations of sexual abuse made by Minor #1 that had taken place over a period of years. The child had first reported some abuse in 2014, and had gone to the local authorities, but no charges were filed. According to the investigation, the abusive activity ended in 2014 after the allegations were initially examined and the family of Minor #1 relocated.[5] On March 5, 2018, Minor #1 reported that the abuse was much more extensive than had previously been disclosed. According to Minor #1, Jerry Zweitzig would frequently expose his penis during episodes of abuse. Minor #1 also disclosed that Zweitzig would use Minor #1's hands to masturbate him on several occasions. Minor # 1 also reported that the defendant told Minor #1 that he would teach Minor # 1 sex acts so that Minor # 1 would be prepared for adulthood and romantic relationships. According to Minor #1, the defendant took pictures of the abuse on multiple occasions.

### Zweitzig's Collection of 10,000 Images of Child Pornography

On April 5, 2018, Horsham detectives served a search warrant at the defendant's Hatboro residence. As a result of the warrant, detectives recovered multiple hard drives, computers, flash drives, and other electronic equipment. Among the evidence that was seized

---

[5] As discussed below, even the initial disclosure of Minor # 1 in 2014 resulting in Zweitzig's false denial to local police in no way deterred Zweitzig's criminal activities. To the contrary, Zweitzig became emboldened in his pursuit of child pornography and amassed in excess of 7,500 images ***after*** Minor # 1 reported his abusive behavior to local police.

during the search warrant, four hard drives were recovered, three from laptops and one from a desktop computer.  All were forensically imaged.

The electronic devices contained over 10,000 pictures and videos of child pornography.  Among the thousands of pictures are underage children engaging in sexual acts with other children, adults, and animals.  Jerry Zweitzig's collection of child pornography is the basis for Count Six of Indictment No. 19-CR-00311, referenced above.  Zweitzig's collection includes an image that was found on the hard drive of Zweitzig's Lenovo ThinkPad laptop.  This is an image of a white, prepubescent child posing nude on a beach.  The child appears to be between the ages of 9 and 11 years old.  The image bears the photo prefix "imgSrc.ru" from a Russian image-sharing website.  ImgSrc.ru has been identified by law enforcement as a popular site for trading child pornography.

On December 12, 2018, defendant Zweitzig was arrested by the Horsham Police Department on state charges alleging sexual abuse of children (child pornography), unlawful contact with a minor, indecent assault, corruption of minors, indecent exposure and invasion of privacy.

The investigation revealed that Zweitzig collected and stored child pornography across multiple electronic and storage devices.

**Zweitzig's Images of Prepubescent Minor #1 At Less Than 12 Years Old**

On April 9, 2019, HSI identified three images and two videos involving Minor #1 from Jerry Zweitzig's collection of child pornography.   The still images depict Minor #1 in the nude, and are charged in Crim. No. 19-CR-00311 as Counts One through Three.  Minor #1's

description of the episode during which these images were likely created and the date and time stamps captured on all three images are consistent with these images being taken by Jerry Zweitzig during a modeling session intended to arouse Jerry Zweitzig and be preserved by him for that purpose.

In the image captured in Count One, Minor #1's genitals are essentially at the center of the image and appear to be the focus, particularly since Minor # 1 is facing slightly away from the camera lens, although the child's body is oriented directly to the camera.  Minor # 1 is standing on a bed in disarray in a bedroom, a place generally associated with sexual activity. In the image, the child is unnaturally stiff, and at age 9, the child is completely nude.  The image captured in Count Two depicts a close up image of Minor # 1's genitals.  The image captured in Count Three is also a close up image of Minor # 1's genitals, but the child is depicted manually manipulating the genitalia.  There is nothing age appropriate about these images taken by Jerry Zweitzig.  All of the facts and circumstances under which the pictures were taken underscore that the images were intended to elicit a sexual response.  Moreover, in Minor # 1's account of the event, the child described Zweitzig's attention and focus on Minor # 1's genitals and his physical manipulation of the child's legs, which he spread apart, during the session.  The same bedsheets and a pair of child's underwear are also depicted in all three images.

File Name 2013.10.12 B_2 AVI from Zweitzig's collection, charged as Count Four of Indictment No. 19-CR-00311, is a video of defendant Zweitzig and Minor #1 depicting them in a bedroom.  The file name of the video places the date as October 12, 2013, and the video is 4 minutes and 27 seconds in length.  The defendant is naked and Minor #1 is clothed.

6

Minor #1 is laying on the bed and the defendant stretched Minor #1's legs in multiple directions. Eventually, Jerry Zweitzig instructed Minor #1 to "exercise his penis," and Minor #1 complied by placing a hand on the defendant's erect penis manually stimulating Zweitzig.

### Zweitzig Recorded the Grooming of Minor #1 for Sexual Acts

During the forensic examination of Jerry Zweitzig's electronic devices recovered in the search, investigators found another video involving Minor #1 captured in the Indictment as Count Five. Specifically, the defendant had stored the video on one of his flash drives. This video has a file name of DSCN1383_2 AVI and is 13 minutes and 6 seconds. The video depicts Jerry Zweitzig's bedroom, and he and Minor #1 are seated on the bed. In the video, the defendant stated that he (Zweitzig) was going to miss Minor #1. The defendant told Minor #1 that Minor #1 could tell him "anything," and ask him any questions, and that Minor #1 can show him anything "without having to be afraid, without having to be ashamed and without being embarrassed." The defendant claimed that he "will never do anything to hurt [Minor #1], will never force [Minor #1] to do anything [Minor #1 does not] want to do" and "[Zweitzig] will never tell anyone else what [Minor #1 does with him]." He admitted on the video to taking pictures of Minor #1 at age 9 and indicated that he wanted to take more pictures. On the video, Zweitzig told Minor #1 that when they are alone, Minor #1 could take a look at his penis any time Minor #1 wants, "touch his penis, play with his penis and suck on his penis like a lollipop." Nevertheless, the defendant warned Minor #1 not to talk to anyone about what Minor #1 does to Zweitzig's "privates." The conversation continued between the two, and Jerry Zweitzig's stated that Minor #1 "will soon get a [significant other] but [underage significant others] don't know

what they are doing."  The defendant repeated that Minor #1 "is safe with him" because he "will never do anything to hurt [Minor #1].  According to the defendant on the video, "I know what I'm doing, I'll never force you to do anything you don't want to do and I'll never tell anyone else about what you do." At approximately 8 minutes and 45 seconds into the video, Jerry Zweitzig's removed his pants and underwear and talked to Minor #1 about "exercising" his penis. The video continued, and Zweitzig started to masturbate in front of Minor #1.  Minor #1 appeared to be upset and crossed in front of the camera and exited the bedroom.

This video does not display a date or time stamp, but investigators determined that it was made on or about January 28, 2014.  On January 28th, while Minor # 1's parents were dealing with the family's impending move out of Pennsylvania, Minor # 1 was at Jerry Zweitzig's home when the child locked the bathroom door to get away from Zweitzig.  Minor # 1 called the child's mother who was out of state at the time with a cell phone.  Minor # 1 said over the phone that the child could not put up with Zweitzig anymore.  Minor # 1 also called the child's father who was at the family's Pennsylvania home in another town arranging for the move.  Minor # 1's parents arranged for an uncle to retrieve Minor # 1 and the child's siblings from Jerry Zweitzig's home.  Two days later, on January 30, 2014, Minor # 1's father contacted the local police to make their first report, and their Pennsylvania home was emptied by movers in anticipation of relocating to another state.  Minor # 1 never set foot in Zweitzig's home again.

**Minor #1**

Minor #1 told investigators that Jerry Zweitzig told Minor #1 that he kept two categories of pictures of Minor #1.  The first category was "silly."  The second category was "sexy."  He displayed the photographs for Minor #1 on his desktop computer.  Minor #1 described incidents like those captured in the images and videos referenced above where Zweitzig took pictures of Minor #1 in various states of dress or undress, directed Minor #1 to pose in various ways, and reported that Jerry Zweitzig was frequently naked himself during these sessions.  Minor #1 identified images of Minor #1 from several electronic files obtained from Zweitzig's electronic devices.

**Zweitzig's Journal**

During the course of Jerry Zweitzig's grooming of Minor #1, the defendant kept a journal.  After Minor #1's family relocated, the defendant mailed some of the pages from the journal to Minor #1.  In the cover letter accompanying the journal pages, the defendant wrote Minor #1 that Minor #1 could read additional pages after Minor #1 turned 18.  Investigators have obtained the portions of that journal authored by Zweitzig sent to Minor #1.  In the pages that were mailed to Minor #1, Minor #1 found particularly disturbing references by Zweitzig about his observations regarding a friend of Minor #1's from "the [school] bus stop" having "reached puberty."

When investigators obtained the journal pages, Minor #1's family also shared a letter written by the defendant in 2016 in which he attempted to explain away three specific

instances where he was caught in inappropriate circumstances with Minor #1 in a bathroom and/or discussing puberty with Minor #1 while the family resided closer to Hatboro.

### Jerry Zweitzig's Interview

On April 4, 2018, Horsham detectives interviewed the defendant the date his residence was searched.  Jerry Zweitzig agreed to a non-custodial interview at the Horsham Police Station.  He denied the allegations, but acknowledged discussing puberty with Minor #1. He told authorities that he had pictures of Minor #1, but denied that any of them involved any kind of sexual or prurient behavior.  He blamed a relative of Minor #1's for the allegations made by Minor #1, claiming that the relative suffered some unspecified mental health and addiction issues.  He specifically denied showing his penis to Minor #1.  At the conclusion of the interview, he left the police station.

### Zweitzig's Jail Calls

Investigators obtained recordings of his jail calls while he was detained pending state charges for various child exploitation offenses.  In summary, the defendant participated in conversations with a family member where he is confronted with the existence of the images and videos involving Minor #1.  Having previously denied that anything like the images of Minor #1 described above even existed, on the recording, Jerry Zweitzig is reduced to telling his family member that he did not believe what he was doing was illegal or a crime because he intended for the images of Minor # 1 to remain "private."

**Minor #2**

In preparing for Jerry Zweitzig's sentencing, the prosecution team identified video of an infant male that resembled Minor #1's youngest sibling, Minor #2. This video has the file name of "DSCN 2442.avi" and is a video of Minor #2, under 6 months of age at the time, lying on light tan carpet and wearing a green and white onesie. During the video, a male's penis comes into view of the camera and is inserted into the infant's mouth. With audible coaxing from defendant Zweitzig, Minor #2 starts to suck on the penis, and Zweitzig's voice is heard reassuring the baby "that's a good boy" repeatedly. The video file has a creation date of "2010-09-08" and was produced by a Nikon camera.

On February 18, 2020, the prosecution team met with the parents of Minor #2 to review a still image made from the video. Minor #2's parents identified the infant depicted in the video to be their child. Minor #2's parents also reported that Jerry Zweitzig would come to their house to babysit immediately after the birth of infant Minor #2. Occasionally, Zweitzig would spend the night while visiting.

## III.   SENTENCING CALCULATION.

### A.   Statutory Maximum Sentences.

The maximum sentences that may be imposed are as follows:

**Manufacture and Attempted Manufacture of Child Pornography,
18 U.S.C. § 2251(a) and (e) (Counts One through Five, Case No, 19-CR-00311
and Count One in Case No. 20-CR-00153)**

For each count: 30 years' incarceration with a 15-year mandatory minimum term, a minimum 5-year term up to a lifetime of supervised release, a $250,000 fine, mandatory restitution, forfeiture, a $100 special assessment, and, if found to be

non-indigent, an additional $5,000 mandatory special assessment must be imposed pursuant to 18 U.S.C. § 3014.

**Possession of Child Pornography, 18 U.S.C. § 2252(a)(4)(B), (b)(2) (Count Six, Case No, 19-CR-00311)**

Because the images in the defendant's collection depict children under the age of 12 years, the maximum penalty is elevated to 20 years' incarceration.  The other penalties remain the same:  a minimum 5-year term up to a lifetime of supervised release, a $250,000 fine, mandatory restitution, a $100 special assessment, and, if found to be non-indigent, an additional mandatory $5,000 special assessment pursuant to 18 U.S.C. § 3014.

**TOTAL MAXIMUM PENALTY**

200 years' incarceration with a 15-year mandatory minimum sentence, a minimum 5-year term up to a lifetime of supervised release, a $1,750,000 fine, mandatory restitution, forfeiture, a $700 special assessment, and, if found to be non-indigent, an additional mandatory $35,000 special assessment must be imposed.

B.   **Sentencing Guidelines Calculation by the U.S. Probation Department.[6]**

The Probation Office correctly calculated the defendant's advisory Guideline range at life imprisonment, but because the statutory maximum for the defendant's offenses is 200 years' incarceration, the effective Guideline range is 200 years.  The defendant's final adjusted offense level was 54, which is 11 levels above the maximum 43, which calls for life imprisonment.  The details of the calculation are as follows:

| **Group One Counts One, Two and Three (19-0311)** | Base offense level, USSG § 2G2.1(a) | 32 |
|---|---|---|
| | Victim age 9, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |

6 The defendant has no objection to the Sentencing Guidelines calculation.

12

| | | |
|---|---|---|
| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |
| | **TOTAL Group One** | **40** |
| **Group Two**<br>**Count Four (19-0311)** | Base offense level, USSG § 2G2.1(a) | 32 |
| | Victim age 9, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |
| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |
| | **TOTAL Group Two** | **40** |
| | | |
| **Group Three**<br>**Count Five (19-0311)** | Base offense level, USSG § 2G2.1(a) | 32 |
| | Victim age 10, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |
| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |
| | **TOTAL Group Three** | **40** |
| | | |
| **Group Four**<br>**Count Six (19-0311)** | Base Offense Level, USSG 2G2.2 | 18 |
| | Material involved victim under the age of 12 years, § 2G2.2(b)(2) | +2 |
| | Material depicted sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4) | +4 |
| | Defendant engaged in a pattern of sexual abuse or exploitation of a minor, § 2G2.2(b)(5) | +5 |
| | Use of a computer, § 2G2.2(b)(6) | +2 |
| | Defendant possessed more than 600 images, 2G2.2(b)(7)(D) | +5 |
| | **TOTAL Group Four** | **36** |
| | | |
| **Group Five**<br>**Count One (20-0153)** | Base offense level, USSG § 2G2.1(a) | 32 |
| | Victim age 6 months old, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |
| | The offense involved material that portrays an infant or toddler, USSG §2G2.1(b)(4)(B) | +4 |

| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |
|---|---|---|
| | **TOTAL Group Five** | **44** |
| | | |
| | Highest Offense Level | 44 |
| | Multicount Adjustment, § 3D1.4 | +4 |
| | Pattern of Activity of Prohibited Sexual Conduct, § 4B1.5(b)(1) | +5 |
| | Deduction for Timely Acceptance of Responsibility | -3 |
| | | |
| | **FINAL ADJUSTED OFFENSE LEVEL** | **50/43** |
| | CRIMINAL HISTORY I | |
| | **FINAL GUIDELINE RANGE** | **LIFE** |

## IV.   SENTENCING ANALYSIS.

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the sentence warranted in this case is one called for by the defendant's advisory Guideline range, namely a total aggregate sentence of 200 years' incarceration.  The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

### Consideration of the 3553(a) Factors.

This Court must consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).[7]

    A.  <u>The nature and circumstances of the offenses</u>

       The depravity of the defendant's offense conduct cannot be overstated.  The defendant has indelibly scarred Minor # 1 mentally and emotionally with his hands-on abuse. Zweitzig victimized Minor # 2 in that child's infancy.  Moreover, he has caused the numerous victims in his collection of child pornography to revisit and confront anew all the pain, trauma, and indignity resulting from their exploitation.  Undoubtedly, this defendant has left his victims' self-worth and ability to trust in tatters, and their psyches will struggle to heal for the rest of their lives.

       Child sexual exploitation crimes are undisputedly grave offenses. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our

---

[7]  Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"  *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003).*

Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, *see H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the continuing harm caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers" which results in a robust and growing market for child pornography and therefore increased abuse of innocent children.  *See Child Pornography Prevention Act of 1996,* Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; *United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998) ("[T]he victimization of the children involved does not end when the pornographer's camera is put away.").

There can be no question that the defendant engaged in extremely heinous and vile crimes against his own family members.  Yet even now, he attempts to minimize his conduct and mischaracterizes his behavior as somehow empowering for Minor # 1.  As detailed in his interview in preparation for the Pre-Sentencing Report, Zweitzig stated the following:

> "Children are taught to be ashamed of their bodies," [Zweitzig] said. "I taught [Minor #1] that, in the house, there was nothing wrong with nudity.  I didn't want

[Minor #1] to be ashamed of nudity.  I wanted (Minor #1) to be able to come to me.  From first grade I created a mantra with [Minor #1]:  You can tell me anything, you can ask me any question, you can show me anything without having to be afraid, embarrassed, or ashamed. I promise I will be attentive to you, accepting of you, and honest with you. I was trying to be the person that [Minor #1] could be comfortable with and could come to."  The defendant continued to attempt to explain his relationship with Minor #1.  "Other than the way I treated (Minor #1), I never treated another child or woman that way," he said. "I really felt that I was trying to help (Minor #1)." The defendant made these remarks prior to the disclosure that he had also sexually abused . . . Minor #2.

PSR ¶ 40.[8]

Zweitzig's crimes have forever violated the innocence and trust of Minor # 1. And, in the process, he damaged Minor #1's entire family and violated Minor # 2.  *See* family victim impact letters in Exhibits A through D.   The victim became extremely depressed and withdrawn.  Minor # 1 described how the child suffered from the trauma of the defendant's crimes writing, "I got to a point where I truly believed that hapiness [sic] did not exist, and often felt that I could not handle the pain, and at times even believed  that I would be better off dead." Exhibit A.  Minor # 1 and the child's immediate family are in counseling as a result of Zweitzig's crimes, they will have to deal with the trauma from Zweitzig's sexual abuse throughout their lives.  Exhibits A, B, C, D.  The defendant has earned a sentence of the same duration.  § 3553(a)(1).  The damage he has done is incalculable.  As the mother of Minor # 1 expressed:

As a mother it is so devastating to think about the weight of this burden on my [child]. [My child] was such a beautiful, bright, joyful little [child] with the most pleasant disposition. But [my child] was forced to carry around a horribly dark secret. No child should ever have to bear such a burden. Because of [Zweitzig's]

---

8 In a truly remarkable display of a complete lack of empathy, Zweitzig announced to the Presentence Investigator that he really want[s] to get back to [his] family."  PSR ¶ 120.  *See also*  PSR ¶ 118.

perverse and criminal actions, [my child] learned about deception at a young age from a man who stood at a pulpit every Sunday preaching the word of God. While he talked to the congregation about how they should be living, he spent his private time getting sexual satisfaction from abusing my children. He called his time with [Minor # 1] "their talks", a phrase that still haunts [my child] today. It is still difficult for me to comprehend the massive confusion his actions caused [my child]. It has affected [my child's] view of God, . . . of men, and relationships.

Exhibit C.

It is significant to note that the hands-on sexual abuse committed by this defendant is not meaningfully accounted for in the calculation of his Guideline range. Had he simply photographed Minor # 1 or Minor # 2 without the sexual molestation captured in some of the images, he would still be facing the same Guideline range of life imprisonment without the two levels added for the actual commission of sexual acts. *See* PSR ¶ 51, 59, 67, 85.

Nor did the defendant's collection of **thousands of images** of child pornography taken from the Internet factor into his Guideline calculation[9]. The investigation revealed that in addition to his abuse of Minor # 1 and Minor # 2, defendant Zweitzig was also well immersed in the online world of child pornography, and that he collected and preserved child pornography for years. He accumulated and stored these images circulating on the Internet even before he chose to sexually abuse and photograph the victim.[10] And, his collection included disturbing

---

9 In PSR paragraphs 73 - 82, the offense level in Group Four was calculated to account for his collection of more than 10,000 images depicting the sexual assault and abuse of children. However, Zweitzig's years-long sex crime spree resulted in five groupings or units under the Guidelines. Since there are between 3 ½ and five separate units, "the offense level is increased by four levels pursuant to USSG §3D1.4." PSR ¶ 94. In other words, even removing the USSG calculations for Group Four entirely would have no impact on Zweitzig's total adjusted offense level of 50. PSR ¶ 94, 95, 99. His Guideline range would still be life imprisonment. His commission of the offense in Count Six of Criminal No. 19-0311, that is, the sexual exploitation of thousands of children through his trafficking in child pornography on the Internet, is therefore completely unaccounted for in his Guideline range.

10 Worse, even after Zweitzig was confronted by Minor # 1's initial disclosure and the local police in 2014, rather than acknowledge his abusive behavior and his addictive issues, he doubled-down and became emboldened as it

images of prepubescent children being raped and sexually assaulted by adult males, forced oral

sex on babies and young girls by adult men and women, and insertion of objects in the anuses

and vaginas of girls and boys.  The children in a significant number of the images are crying

and clearly in pain.  These disturbing and demented images and videos were used for this

defendant's sexual gratification, and this defendant spent countless hours on the computer

searching for and downloading child pornography.  Defendant Zweitzig's part in the continued

victimization of these children is consequential and demands punishment and accountability.

In *United States v. MacEwan*, 445 F.3d 237 (3d Cir. 2006), the Third Circuit

upheld the defendant's sentence for distributing and possessing child pornography based, in large

part, on the extreme harm to the children who are victims of sexual abuse:

> "In evaluating the magnitude of the harm caused by child pornography, we defer to
> the findings made by Congress. The congressional findings underlying § 2251
> repeatedly stress that child pornography 'is a form of sexual abuse which can result
> in physical or psychological harm, or both, to the children involved.'   Child
> Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009,
> 3009–26 (1996) (codified as amended at 18 U.S.C. § 2251).  Congress found that
> 'where children are used in its production, child pornography permanently records
> the victim's abuse, and its continued existence causes the child victims of sexual
> abuse continuing harm by haunting those children in future years.' *Id.*  **Moreover,
> Congress found little distinction in the harm caused by a pedophile, be he a
> distributor or mere consumer in child pornography, because the mere
> 'existence of and traffic in child pornographic images creates the potential for
> many types of harm in the community and presents a clear and present danger
> to all children.'** § 121, 110 Stat. at 3009–27.  **Furthermore, 'it inflames the
> desires of ... pedophiles ... who prey on children, thereby increasing the
> creation and distribution of child pornography and the sexual abuse and
> exploitation of actual children who are victimized as a result of the existence
> and use of these materials.**  *Id.; see also New York v. Ferber*, 458 U.S. 747, 757

---

related to collecting child pornography. He saved and/or transferred in excess of 7,500 images **after** Minor # 1 first
reported the abuse.

(1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.")."

*United States v. MacEwan*, 445 F.3d at 249-50 (emphasis added).  Defendant Zweitzig, and others like him who share in the world of child pornography, perpetuate the harm to the victims depicted in these images by creating demand and fueling this market, thereby leading to further production of images.  The children are victimized every time the images are downloaded, purchased or viewed by another person.  Given the scope of the Internet, their exploitation is ongoing and relentless[11].  The images of these children – their most private parts, their faces, the sexual assaults they suffered at the hands of their adult abusers - are being circulated around the world, downloaded and viewed by men like this defendant, who use them for self-gratification.  This Court need only read an excerpt from the letters from the child victims and their families who were part of the defendant's collection to understand the significance of the harm and abuse inflicted upon these small children, all for the sexually deviant "pleasure" of people like this defendant (*See* Exhibits E through ZL, and the excerpts below):

> I am writing to let you know that I am still having emotional and psychological problems due to knowing that images of me being abused as a child are circulated freely on the internet . . .
>
> I have recently gotten married and with this change to a new stage in my life[,] I have found that I have a new set of emotional challenges.  I also have a step daughter [sic] who is just two years old.  I see myself in her in so many ways[,] and this triggers concerns I have about keeping her safe given the amount of people who are downloading images of me.  Because of this[,] I know that the world is not a safe place for children.  Knowing that there are so many out there who have taken pleasure in my pain has also interfered with my intimacy with my husband . . . Even though I know

---

[11] The National Center for Missing and Exploited Children ("NCMEC") identified a number of the children depicted in the defendant's collection whose images were traded all over the world. See PSR ¶ 35, 78, 164.

this and can see it coming[, I]t is very hard to bear.  Counseling is a rock
for me and helps me hang on to what stability that I can.

Exhibit ZL (p. 116) *(Vicky series Victim)*.

Every time someone views this trash, he is once again making me re-live
the most horrific part of my childhood.  I can never truly heal because the
perpetrators and stalkers never allow me to do so.  Anyone viewing these
videos/pictures is just as guilty for causing me or any other exploited child
undue harm, unneeded stress and insecurity in a time when we need to
feel safe and have a chance to heal/recover.  As a young adult, I now
realize the extent of people looking at these and I'm concerned about their
locations fearing that they will find me.  These people need to be punished
for taking away a major part of my childhood and sense of security.

Exhibit ZK (p. 107) *(Tara Series Victim)*.

The Supreme Court has clearly recognized the harm to these children, noting that

the "materials produced are a permanent record of the children's participation and the harm to

the child is exacerbated by their circulation."  *New York v. Ferber*, 458 U.S. 747, 759 (1982);

*Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the

child victims continuing harm by haunting the children for years to come.")  The letters cited

above, which are appended to this sentencing memorandum along with numerous others,

describe the same life-long pain that each victim endures because of the collection of their

pornographic images by men like Zweitzig.

By his own account, Zweitzig was specifically and intimately aware of the

damage suffered by the child victims of sexual abuse.  As he explained to investigators, "My

[adult family member] was sexually abused as a child.  So I know from an adult perspective

some aspects of that."  PSR ¶ 26.  Knowing what he knew about the long-term damage, he

physically abused children and the thousands depicted in his collection of child pornography

anyway.  Zweitzig has therefore demonstrated a chilling and absolute disregard for the harm caused to these children by his callous and sexually deviant crimes.  The crimes he committed against these young victims further warrant the equivalent of a life sentence.  §3553(a)(1).

B.   The history and characteristics of the defendant

The history and characteristics of this defendant also favor a Guideline sentence. This defendant comes before this Court with no prior convictions.  Though this is the defendant's first criminal conviction, he committed these crimes many times over a period of years.  And yet, his Guidelines in this case have been calculated as a first-time sex offender.  The Guidelines already reflect the fact that he has no prior criminal record.  He should not now receive any additional consideration.  *See United States v. Borho*, 485 F.3d 904 (6th Cir. 2007) (There were no "extraordinary circumstances" that justified a decreased sentence based on, among other considerations, the defendant's lack of a criminal history, lack of evidence that he had ever molested a child, and a sex offender risk assessment that opined that the defendant was at low risk for re-offending); *United States v. Peterson*, 83 Fed.App'x. 150 (8th Cir. 2003) (appeals court reversed District Court's downward departure based on the low likelihood for re-offense and susceptibility to abuse in prison, as the first factor was already accounted for in the Guidelines and the second factor was inapplicable to the facts of the case); *United States v. Goldberg*, 295 F.3d 1133 (10th Cir. 2002) (defendant's lack of prior record, and low risk of recidivism are not valid grounds for downward departure because those factors are all taken into account in the Guidelines themselves).

The vast majority of federal child pornography offenders have no prior records at all at the time that they are sentenced. *U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320* (2011) available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm. This puts defendant Zweitzig squarely in the heartland of most sex offenders in federal court.

Significantly, a review of the sentences imposed in this district for the same offenses committed by this defendant - production of child pornography - shows that most defendants were first time offenders, like Zweitzig. And despite the fact that these first time offenders entered guilty pleas, most of the sentences imposed in this District were still within or near their Guideline ranges. Most significant, at least three of the first time offenders in the EDPA were sentenced to life imprisonment, based, in part, on the fact that they had molested the victims as part of their crimes. See *United States v. Maffei* (Cr.No. 16-511)(Goldberg, J.)(statutory maximum sentence of 90 years' imprisonment imposed on defendant who manufactured two images of child pornography but sexually abused his 7-year old victim during the commission of his crimes. Defendant was a first time offender); *United States v. Krapf* (Cr. No. 14-36)(Sanchez, J.)(sentence of life imprisonment for first-time offender, Guideline range of life. Defendant molested his victims before photographing); *United States v. Mazer* (12-546)(DuBois, J.)(sentence of 720 months' incarceration (statutory max) imposed on Guidelines of life imprisonment for first time offender with hands-on abuse); *United States v. Worman* (Cr.No. 07-40) (Stengel, J.)(sentence of 120 years with Guidelines of life imprisonment

equivalent, first time offender**,** with hands-on abuse).  *See also United States v. Jaquier Fishburn* (Cr No. 16-087)(Pappert, J.)(sentence of 360 months' incarceration on Guidelines of 324 to 405 months for first time offender who was 25 years old at the time of sentencing but who had sexually molested victim); *United States v. James Donaghy* (Cr.No. 17-39)(Bartle, J.)(sentence of 180 months' incarceration on Guidelines of 180 to 210 months, for first time offender who was 35 years old at the time of sentencing, but crimes limited to the Internet); *United States v. Quasim Cunningham* (Cr. No. 15-170)(Diamond, J.)(sentence of 240 months' incarceration on Guidelines of 235 to 293 months for 29-year old first time offender whose crimes were limited to the Internet); *United States v. Jose Gonzalez* (Cr.No. 14-448)(Padova, J.)(sentence of 420 months' incarceration imposed on Guidelines of 360 months to life for first time offender who abused two-year old); *United States v. John Corcoran* (Cr. No. 15-132)(Baylson, J.)(sentence of 336 months imposed on Guidelines of 292 to 365 months' imprisonment, 20-year old first time offender); *United States v. Mark Wilkens* (Cr. No. 15-520)(Rufe, J.)(sentence of 180 months' incarceration imposed on 56-year old first time offender on Guidelines of 292 to 365 months. No hands on sexual abuse); *United States v. Kevin Rebbie* (Cr.No.15-300)(Quinones, J.)(sentence of 240 months' incarceration imposed on Guidelines of 210 to 262 months for defendant, first time offender. No hands on sexual abuse of victim); *United States v. Becktold* (Cr.No. 14-30)(Sanchez, J.)(210 months incarceration imposed with Guideline range of 210 to 262 months, first time offender, no hands-on sexual abuse); *United States v. Townsend* (Cr.No. 13-625)(Dalzell, J.)(sentence of 262 months' incarceration imposed on Guidelines of 210 to 262 months); *United States v. Horton* (Cr.No. 12-228)(McLaughlin, J.)(sentence of 276 months

imposed on Guidelines of 360 to life imprisonment, prior offense of DUI only); *United States v. Knappenberger* (Gardner, J.)(Cr.No. 11-316)(sentence of 420 months' incarceration imposed with Guidelines of life imprisonment); *United States v. Prawdzik* (Cr.No. 07-40)(Stengel, J.)(sentence of 360 months imposed with Guidelines of 210 to 262 months, first time offender, sexually abused victims); *United States v. Jackson* (Cr. No.07-40)(Stengel, J.)(sentence of 300 months imposed with Guidelines of 360 months incarceration, first time offender).

The purpose of including these cases as part of the Government's sentencing memorandum is to demonstrate that the Guideline range is most often imposed for more serious offenders, like Zweitig. The Guidelines are especially helpful where, as here, the defendant's offense level so far exceeds the statutory maximum accounted for by the federal guidelines.

The defendant stands before this Court as a 72-year old, well-educated retiree with Divinity degrees who bounced around from congregation to congregation within the Eastern District until he retired in 2016. PSR ¶ 143-147. He claims to have taken a break from his ministry 1993 to 1994 to ". . . minister to my family." PSR ¶ 145. During this hiatus, he unloaded trucks and worked as a "charge-back manager." *Id*. His assets appear limited to the marital home, **which was transferred to his wife's name shortly after his arrest**, and some $20,000 held in some bank accounts.[12] PSR ¶ 148.

Zweitzig now acknowledges a decades-long "addiction" to internet pornography and that he would masturbate while viewing child pornography in particular. PSR ¶ 124.

---

12 The victims are entitled to mandatory restitution in this case and the government respectfully requests that this Court direct defendant to pay restitution immediately from these available assets.

Disturbingly, his addiction obviously overlaps with his time spent in ministry, and he was abusing his family members even while he "counseled" others. *See* PSR ¶ 125. This speaks volumes as to his character, and should be considered by this Court in imposing the statutory maximum sentence sought by the Government. § 3553(a)(1).

Even more damning, however, is Zweitzig's own acknowledgement, referenced above, that he was well aware of how damaging his predatory sexual misconduct was for his victims. When interviewed by investigators a second time in April 2018 about the allegations made by Minor # 1, Zweitzig again lied and said they were untrue. But, he continued:

> Q.     While talking to [Minor #1] about puberty and changing did you ever talk about specific body parts, either [the child's] or yours?
>
> A.     … I never did anything that I thought would be harmful to [the child] because I know through past experience about the harm that can be done through childhood sexual abuse and how that affects adults with marriage. So I was very careful not to do anything that would be harmful.
>
> Q.     Did you ever experience sexual abuse?
>
> A.     No.
>
> Q.     You just learned about it in counseling?
>
> A.     Yes. My [adult family member] was sexually abused as a child. So I know from an adult perspective some aspects of that.

PSR ¶ 26.

The above exchange also demonstrates a chilling lack of remorse. This Court will search in vain in the Presentence Report for any scintilla of evidence that Zweitzig has expressed any regret, sorrow, repentance, or even shame for what he has done. Instead, he told the presentence investigator, "I really felt that I was trying to help (Minor #1)." PSR ¶ 40. He

withheld any reference to his abuse of Minor # 2, and omitted any mention of the victims captured in his extensive collection of child pornography.  It is well-settled that "lack of remorse is a fact that a district court can consider in its evaluation of the § 3553(a) factors."  *United States v. Sweat*, 573 F. App'x 292, 298 (4th Cir. 2014); *see also United States v. Keskes*, 703 F.3d 1078, 1090-91 (7th Cir. 2013) ("A lack of remorse is a proper sentencing consideration 'because it speaks to traditional penological interests such as rehabilitation (an indifferent criminal isn't ready to reform) and deterrence (a remorseful criminal is less likely to return to his old ways).'" (citation omitted)); *United States. v Mitchell*, 681 F.3d 867, 884-85 (6th Cir. 2012 (bribery case; distinguishing lack of remorse, where defendant persisted in denying his involvement following jury verdict, from exercise of trial right); *United States v. Cruzado-Laureano*, 527 F.3d 231, 236-37 (1st Cir. 2008) (rejecting argument that lack of remorse in § 3553 analysis  was unfair "double counting" where court also denied downward offense level adjustment for acceptance of responsibility); *United States Smith*, 424 F.3d 992, 1016-17 (9th Cir. 2005) (approving district court's above-Guidelines sentence in a tax protestor fraud case based in part on defendant's lack of remorse).  Here, the defendant's lack of remorse is an aggravating factor that speaks poorly of Zweitzig' personal characteristics and potential for rehabilitation.

C.  <u>The seriousness of the offense, respect for the law, and just punishment</u>.

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).  This defendant's crimes are among the most serious.  And his choice of victims for hands-on sexual abuse – his vulnerable, trusting family members – elevates the seriousness of his

offenses. The sentence in this case must promote respect for the laws that Zweitzig has broken over so many years of his life, and must make him understand the impact of his crimes. This can only be done by the imposition of a significant sentence of incarceration, that is, the life sentence called for by his Guidelines range.

As for the last factor, only a sentence reflecting the Guideline range can adequately punish this defendant. He violated his position of trust with his family. He broke the laws designed to protect children. And, he desecrated the rights of all of the children in his "collection" to be free from predators like this defendant. A sentence of 200 years has been well-earned, and is necessary to protect those who cannot protect themselves. § 3553(a)(2)(A).

D. <u>Deterrence</u>.

Deterrence is also one of the factors driving the sentence in this case, and a sentence within the Guideline range would address this concern. Zweitzig himself needs to be deterred from continuing his life of sexually exploiting children. There are no boundaries which he will not cross. He exploited children within in his reach – family members – who were too young and even physically unable to speak for themselves, as in the case of Minor # 2, or abused his position of power and trust to manipulate them into suffering in silence, as with Minor # 1. Only a severe sentence will demonstrate to this defendant that his behavior cannot be tolerated by society.

Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses. The sentence in this case must give notice that the sexual abuse and exploitation of children has serious and significant

28

consequences.  A term of incarceration called for by the Guidelines in this case will serve as a deterrent to those who may contemplate the consequences of sexually abusing a child.

> E.  <u>Other considerations</u>.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ."  § 3553(a)(2)(D).  The defendant does not require drug treatment, nor is there any need to provide him with educational or vocational training. PSR ¶ 134-140.  He suffers mild depression.  136.

> F.  <u>Restitution</u>.

Restitution is mandatory.  There were dozens of identified victims in this defendant's collection, but only sixteen have requested restitution for the harms caused by the defendant's crimes.  *See* Exhibit ZM.  Counsel will attempt to negotiate a settlement prior to the sentencing hearing.  In the event that one cannot be reached prior to sentencing, the Government will submit this issue for the Court's determination at the hearing.

## V.   <u>CONCLUSION</u>

For all of the reasons outlined above, the appropriate considerations of sentencing favor the imposition of a sentence of incarceration within the Guideline range, namely, a sentence of 200 years' imprisonment.

> Respectfully submitted,
>
> WILLIAM M. McSWAIN
> United States Attorney

_s/ *Eric L. Gibson*_____
Eric L. Gibson
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by email and through the electronic filing system upon counsel for defendant:

Katrina Young, Assistant Federal Defender
Katrina_Young@fd.org

_s/ *Eric L. Gibson*_____
Eric L. Gibson
Assistant United States Attorney

Date: September 14, 2020.

31